UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
Civil Action No.: 3:05CV95MU

SONIC AUTOMOTIVE, INC., )
)
        Plaintiff, )
)
v. ) ORDER
)
FREDERIC ALAN FORDIN, )
)
        Defendant. )
_____)

This matter is before the court upon Defendant's Motion to Dismiss, or in the Alternative, to Stay the Present Action pursuant to the Colorado River Abstention Doctrine and 12(b)(6) of the Federal Rules of Civil Procedure, filed on March 10, 2005. On April 4, 2005, Plaintiff filed a response to Defendant's Motion to Dismiss. On April 12, 2005, Defendant filed its Reply. This motion is now ripe for disposition by the court.

## FACTS

Plaintiff Sonic Automotive, Inc. ("Sonic"), headquartered in Charlotte, is an automobile sales company that owns retail subsidiaries throughout the country. From September 2003 to January 2005, Defendant Fred Fordin was an employee at two of the subsidiaries in Florida—Sonic-FM, Inc., d/b/a BMW of Fort Meyers ("BMW"), and Sonic Freeland, Inc., d/b/a Honda of Fort Meyers ("Honda"). During his employment with the Sonic organization, Defendant developed three software programs–*Cash Flip*, *Galacticar*, and *SDN Pro* (collectively, "Software")–which he installed on the computers at BMW and Honda and used to facilitate the

1

management and operation of those dealerships. Defendant allegedly relied on Sonic's confidential information, including company data and employee records, to develop and implement the Software.

In February of 2004, Defendant participated in Sonic's Dealer-In-Training program and accordingly entered into a Dealer-In-Training Program Participation Acknowledgment ("DIT Agreement") with Sonic. The agreement stipulated that Sonic would provide Defendant four weeks of training on the logistics of managing an automobile dealership and that Defendant would reimburse Sonic for a portion of those training costs if he voluntarily terminated his employment within two years of beginning the program.[1]

In July of 2004, Defendant entered into a Restrictive Covenants and Confidentiality Agreement ("RC Agreement") with Sonic for which he received a stock option award. In the agreement, Defendant acknowledged that any computer software programs he designed while working for Sonic or its subsidiaries would be the exclusive property of Sonic or the specific subsidiary. On December 30, 2004, Defendant attempted to disable the Software programs at Honda and ordered Sonic and Honda to discontinue using the Software. Defendant maintains that the Software belongs to Millennium 3, a Florida company formed by Defendant and his wife in July 2003 solely to market and sell the Software. Defendant further contends that he created the various Software programs when he did not work for Sonic or a subsidiary thereof, or if he was an employee of Sonic, during non-working hours. Defendant left his employment with Honda in January of 2005.

---

[1] Defendant began the training program on March 21, 2004 and quit working for Sonic ten months later in January of 2005, triggering a 60% repayment amount totaling $14,706.64.

2

On January, 28, 2005, a few weeks after Defendant quit working for Sonic, BMW and Honda jointly brought suit in a Florida state court against Defendant and Millennium 3 for breach of duty of loyalty and breach of contract. Both BMW and Honda seek damages, a declaration that the exclusive use and ownership rights to the Software belong to BMW and Honda, as well as an injunction prohibiting Defendant and Millennium 3 from any further use and possession of the Software. Shortly thereafter, on February 1, 2005, Sonic filed suit in this court against Defendant for breach of contract, conversion of the software, and unfair and deceptive trade practices. Sonic seeks damages, a declaration that the Software belongs exclusively to Sonic and its subsidiaries, and a permanent injunction ordering Defendant to discontinue use of the software.

While both the Florida Plaintiffs and the North Carolina Plaintiff request relief based on Defendant's breach of the RC Agreement, Sonic also seeks relief based on Defendant's breach of the DIT Agreement.

## I. Defendant's 12(b)(6) Motion

The purpose of a Rule 12(b)(6) motion is to test the legal sufficiency of a plaintiff's complaint. *Suarez v. Charlotte-Mecklenburg Schs.*, 123 F. Supp. 2d 883, 885-86 (W.D.N.C. 2000) (*citing Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)). In considering a Rule 12(b)(6) motion to dismiss, the Court must take the allegations in the complaint as true and construe the facts alleged in the complaint in the light most favorable to the plaintiff. *GE Inv. Private Placement v. Parker*, 247 F.3d 543, 548 (4th Cir. 2001). "[Dismissal may occur] only if it appears beyond doubt that the plaintiff[ ] can prove no set of facts in support of [her] claim that would entitle [her] to relief." *Jackson v. Blue Dolphin*

*Communications of N.C., L.L.C.*, 226 F. Supp. 2d 785, 788-89 (W.D.N.C. 2002) (brackets in original) (*quoting Flood v. New Hanover County*, 125 F.3d 249, 251 (4th Cir. 1997)).

The Defendant has moved to dismiss Plaintiff's claim for breach of the DIT Agreement for failure to state a claim upon which relief may be granted. In order for a breach of contract claim to survive a 12(b)(6) motion, the complaint must allege (1) the existence of a valid contract and (2) a breach of the terms of that contract. *Woodlard v. Davenport*, 601 S.E.2d 319, 322 (N.C. App. 2004) (citations omitted). If both of these elements are present, it is erroneous to dismiss the claim. *Id.* Further, the interpretation of a contract is a factual determination that is not appropriate under a 12(b)(6) motion. *IWTMM v. Forest Hills Rest Home*, 577 S.E.2d 175 (N.C. App. 2003). Dismissal is proper, however, if (1) the complaint facially reveals that there is no law that supports the pleaded claim, (2) the complaint facially lacks facts necessary to validate the claim, or (3) the complaint reveals a certain fact which necessarily defeats the claim. *Id.*

In its North Carolina Complaint, Sonic alleges that Defendant entered into a DIT Agreement with Sonic, whereby Sonic agreed to provide Defendant with management training and Defendant agreed to pay back a portion of Sonic's training expenses if he voluntarily terminated his employment with Sonic within two years of beginning the program. Sonic further maintains in its Complaint that Defendant voluntarily terminated his employment with Sonic before the requisite two year period had lapsed, thus incurring an obligation to repay a 60% portion of the training costs, or $14,706.64. Defendant's alleged failure to reimburse Sonic is a breach of the contract terms. Thus, Sonic has pleaded the existence of a contract and the breach thereof, the two substantive elements necessary to survive a 12(b)(6) dismissal. Taken as true, these allegations are legally sufficient to entitle Sonic to recover.

4

Defendant, however, argues that Sonic's Complaint discloses certain facts which necessarily defeat its claim, and therefore dismissal is appropriate. Specifically, Defendant contends that the DIT Agreement pertains only to Sonic employees and not to employees of Sonic subsidiaries. Because Defendant argues he was never an employee of Sonic itself, he contends that he is not bound by the DIT Agreement.

Whether the term "Sonic" includes both Sonic Automotive, Inc. and its subsidiaries is a factual determination that is not properly decided under a 12(b)(6) motion. Specifically, North Carolina courts have consistently held that whether an individual is an employee of a particular company is a factual question. *Weber v. Comm'r of IRS*, 60 F.3d 1104, 1110 (4th Cir. 1995) (finding that the presence or absence of an employer/employee relationship is a question of fact); *Denton v. South Mountain Pulpwood Co.*, 69 N.C. App. 366, 368, 317 S.E.2d 433, 434 (1984) (also finding that presence or absence of employer/employee relationship is a question of fact).

Additionally, although the DIT Agreement does not specifically mention Sonic subsidiaries like the RC Agreement does, it does not define the term "Sonic" either. To endorse Defendant's contention that "Sonic" refers only to Sonic Automotive, Inc. of which Defendant was not an employee, would be tantamount to holding that the parties entered into a meaningless contract, as both parties clearly knew that Defendant was not an employee of Sonic Automotive, Inc. North Carolina law, however, requires that agreements be examined with the intent and relationship of the parties at the time the contract is made. *In re Stimpson*, 248 N.C. 262, 265, 103 S.E.2d 352, 355 (1958).

Defendant also alludes to the fact that Defendant may not have voluntarily ended his employment, another condition which must be met before Plaintiff is entitled to recover under

5

the DIT Agreement. Voluntary termination is yet another question of fact and therefore inappropriate when considering a 12(b)(6) motion.

Plaintiff asserted in its Complaint that Plaintiff and Defendant entered into a legal contract which Defendant breached. Any ambiguities that arguably arise from the DIT Agreement may be resolved at a later date. Accordingly, Defendant's 12(b)(6) Motion will be denied.

Alternatively, Defendant requests that Plaintiff's breach of contract claim be dismissed or stayed pursuant to the *Colorado River* abstention doctrine. For the reasons set forth in Section II, this motion will likewise be denied.

## II. *COLORADO RIVER* ABSTENTION:

Abstention is a rare and narrow exception to the federal courts' "virtually unflagging obligation" to adjudicate the cases and controversies that come before them. *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 817 (1976). This limited exception rests on principles of "wise judicial administration...conservation of judicial resources and comprehensive disposition of litigation." *Id.* Abstention is only appropriate when (1) the two different lawsuits are parallel proceedings and (2) there are exceptional circumstances that warrant it. *Baseline Sports, Inc. v. Third Base Sports*, 341 F. Supp.2d 605, 608 (E.D.Va. 2004).

### A. The Florida And North Carolina Proceedings:

Two proceedings are parallel when substantially similar parties litigate substantially similar issues in different forums. *New Beckley Mining Corp. v. Int'l Union, UMWA*, 946 F.2d 1072, 1073 (4th Cir. 1991). While parties need not be identical in order to constitute substantial similarity, North Carolina courts consider parent corporations and their subsidiaries "distinct

legal entities [which] maintain their separate and distinct identities." *Palm Beach, Inc. v. Allen*, 91 N.C.App. 115, 117, 370 S.E.2d 440, 441 (1988). As separate entities, each has individual property rights separate from the other. *Smith v. Washington Sheraton Corp.*, 135 F.3d 779, 786 (D.C. Cir. 1998) (citations omitted); *In re Pearl-Wick Corp.*, 15 B.R. 143, 147 (S.D.N.Y. 1981). Further, for the purposes of determining the applicability of the *Colorado River* abstention doctrine, the federal proceeding must be duplicative of the state proceeding in order to constitute a parallel suit. *See McLaughlin v. United Virginia Bank*, 955 F.2d 930, 945 (4th Cir. 1992) (finding abstention improper when the federal and state actions had similar claims and arose from the same events but were not "totally duplicative").

Defendant maintains that the federal action and the state action involve substantially the same parties and issues. The Florida lawsuit was initiated by two Sonic subsidiaries, Honda and BMW, against Fred Fordin and Millennium 3. On the other hand, Sonic was the sole Plaintiff to bring the North Carolina lawsuit against Fred Fordin, the sole Defendant. Defendant argues that the interrelation and close alignment of interests between the Plaintiffs in both lawsuits should outweigh the fact that parents and subsidiaries are separate legal entities. Specifically, Defendant notes that letters received by Mr. Fordin after his termination from Honda were signed by an individual who was an agent of both Sonic and Honda. The interconnectedness of the various Plaintiffs, according to Defendant, is also evident in Sonic's demand in the North Carolina complaint that *it and its subsidiaries* be declared the rightful owners and possessors of the Software.

Although the Plaintiffs in the respective lawsuits may operate as one unit in the boardroom, they are indeed entirely separate and distinct in the courtroom. Accordingly, both

7

Sonic and the Honda and BMW subsidiaries assert property claims to the Software. Notably, the subsidiaries who initiated suit in Florida seek exclusive ownership of the Software. Therefore, were this court to abstain, Sonic, who is not a party to the Florida lawsuit, would have to join the suit in Florida in order to protect its own property rights in the Software. A complicating factor, however, is a forum selection clause in the RC Agreement, which identifies Mecklenburg County as the appropriate forum in which to bring any and all proceedings stemming from the Agreement. For the purposes of invoking *Colorado River*, the Court finds that the parties in the two lawsuits are not substantially similar.

The issues in the two proceedings are likewise dissimilar. The Sonic subsidiaries in the Florida lawsuit claim breach of duty of loyalty and breach of the RC Agreement against Fred Fordin and Millennium 3. Conversely, Sonic asserts claims of breach of the DIT Agreement, breach of the RC Agreement, conversion of the Software, and unfair and deceptive trade practices against Fred Fordin. The Plaintiffs in both lawsuits seek damages and declaratory and injunctive relief.

Defendant maintains that there are substantially similar issues in both proceedings, pointing to the similar relief sought by the Plaintiffs in both lawsuits and the fact that the claims in both actions require resolution of the same facts. Specifically, Defendant contends that the North Carolina lawsuit, like the Florida lawsuit, turns on the dispute of ownership of the Software. However, Defendant fails to address Sonic's claim for breach of the DIT Agreement. It appears that this contract claim is based on an entirely separate contract and is in no way dependent upon the outcome or facts surrounding the RC Agreement. *See McLaughlin*, 955 F.2d 930, 935 (4th Cir. 1992) (finding abstention inappropriate when there was a contract claim

8

pending in the federal case that had not been introduced in the state case). In this claim, Sonic is not seeking ownership or possession of the Software, but reimbursement for a training program that Fordin participated in. Therefore, the issues are not substantially similar and the Florida lawsuit would not comprehensively dispose of all of the claims presented in the North Carolina proceeding.

## B. Exceptional Circumstances:

Even if the two proceedings are parallel, the Court finds that there are no exceptional circumstances that justify employing the *Colorado River* abstention doctrine. To determine whether exceptional circumstances are present, federal courts may look to (1) the inconvenience of the federal forum; (2) the order in which jurisdiction was obtained by the different forums; (3) the desire to avoid piecemeal litigation; (4) the source of law and the adequacy of the state court to protect the parties' rights; and (5) the reactiveness or vexatiousness of the subsequently filed suit. *Baseline Sports*, 341 F. Supp. 2d at 608; *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1 (1983). These are non-exclusive, weighing factors to be "heavily weighted in the favor of the exercise of jurisdiction." *Gordon v. Luksch*, 887 F.2d 496, 498 (4th Cir. 1989) (quoting *Moses Cone*, 460 U.S. at 16). Only the "clearest of justifications" warrants abstention. *Colorado River*, 424 U.S. at 819.

### 1. Inconvenience of the Federal Forum

This factor weighs in favor of abstention. The two fora are more than 700 miles apart. While Sonic is located in Charlotte and the DIT program occurred in Charlotte, Fordin lives in Florida, Fordin was employed by subsidiaries that are located in Florida, three of the four parties that seek relief based on the RC Agreement are in Florida, the conduct giving rise to a majority

of the claims occurred in Florida, and most of the witnesses and evidence are located in Florida. Plaintiff's argument that the federal court can invoke its subpoena and compulsory process power to remedy the distance problem does not mitigate the inconvenience that exercising such power would impose. Sonic further points out that some evidence and witnesses necessary to adjudicate its claims are in Charlotte. However, such evidence primarily speaks to only one of Sonic's five claims–breach of the DIT Agreement. The remaining four claims rely on evidence and witnesses located in Florida.

## 2. The Order in Which Jurisdiction Was Obtained By the Various Forums

This factor measures not simply the order in which the lawsuits were initiated, but the amount of progress made in each. *Moses Cone*, 460 U.S. at 21. Both the North Carolina and Florida lawsuits were filed essentially simultaneously. Additionally, no substantial proceedings have taken place in either action. Accordingly, this factor weighs neither for nor against abstention.

## 3. The Desire to Avoid Piecemeal Litigation

This factor weighs in favor of retaining jurisdiction. While the desire to avoid judicial diseconomy has been considered the most important of the *Colorado River* factors, it is to be narrowly construed. *Baseline Sports*, 341 F. Supp. 2d at 610; *Flanders Filters, Inc. v. Intel Corp.* 93 F. Supp. 2d 669, 674 (E.D.N.C. 2000). Duplicative litigation is a component of virtually all parallel proceedings, and thus it, in and of itself, does not constitute an exceptional circumstance contemplated by *Colorado River*. *Flanders*, 93 F. Supp. 2d at 669. For the mere risk of piecemeal litigation to qualify as an exceptional circumstance warranting abstention, retention of the litigation must "create the possibility of inefficiencies and inconsistent results beyond those

inherent in parallel litigation...." *Gannett Co., Inc. v. Clark Constr. Group, Inc.*, 286 F.3d 737, 744 (4th Cir. 2002).

Defendant points out that the Florida and North Carolina actions require substantially similar discovery, including production of the same documents and physical evidence. Defendant further posits that parallel motions, depositions, and hearings are likely due to the nature of the claims. However, these circumstances are common among concurrent proceedings that contain overlapping issues. They are not extraordinary in and of themselves and do not counsel in favor of abstention.

### 4. The Source of Applicable Law and the Adequacy of the State Forum to Protect the Parties' Interests

This factor weighs in favor of this court retaining jurisdiction. The source of law and the adequacy of the state forum to protect the parties' rights rarely qualify as exceptional circumstances warranting abstention. *Gannet*, 286 F.3d at 746. These factors only tip the balance in favor of abstention when an important federal right is implicated and the state court is ill-equipped to protect that right. *Id.* Likewise, abstention is preferable if the federal court's retention of jurisdiction clashes with important state policy. *Id.* The adequacy of the state court's ability to protect the parties and their claims is determined by examining the "current posture of the state court actions." *Id.* at 745.

No federal question is presented in either lawsuit, and this Court's retention of Sonic's proceeding would not conflict with any significant Florida policy. Additionally, Defendant's assertions that Sonic is likely protected by its subsidiaries in the Florida action and that witnesses in Florida are not subject to North Carolina for personal jurisdiction purposes do not constitute

11

the rare and extraordinary circumstances that would justify abstention based on this factor.

### 5. The Reactive or Vexatious Nature of the Later Filed Suit

This factor likewise does not weigh in favor of abstention. The appearance of the filing of a federal suit as a "defensive tactical maneuver" that functions as a "vexatious use of the federal courts" counsels in favor of abstention. *Moses Cone*, 460 U.S. at 17, fn.20 (citation omitted). However, "absent a finding of bad faith, the courts should...seek to dispose of the disputes efficiently and justly." *McLaughlin*, 955 F.2d at 935-36. Even if there is no indication of bad faith on the part of the plaintiff, abstention is preferable if the plaintiff attempted to sidestep the state court and reverse the stance of the parties. *Baseline Sports*, 341 F. Supp. 2d at 611 (citation omitted).

Defendant contends that filing two separate lawsuits in different states was a calculated strategy between Sonic and the Sonic subsidiaries to increase the cost of litigation, thereby forcing Fordin to acquiesce in their demands. Defendant further alleges that Sonic was antagonistic and acted in bad faith and provides statements made to Fordin by a Sonic employee as evidence. Plaintiff counters that any evidence of vexatiousness or bad faith on its part is pure speculation based solely on Fordin's account of the disputed events.

While it may not be readily apparent why Sonic and its subsidiaries brought suit against Fordin in two different fora, other than the forum selection clause, there does not appear to be any substantiated evidence of bad faith or efforts to reverse the roles of the parties. In fact, the alignment of the parties as defendants/plaintiffs remains the same in both lawsuits.

Although both the Florida and North Carolina proceedings will likely involve duplicative discovery and strain judicial resources, they will do so no more than any concurrent proceedings

12

with overlapping issues and common factual underpinnings. They certainly do not involve the exceptional circumstances contemplated by the *Colorado River* Court. Bearing in mind that abstention is the exception, not the rule, and that only the clearest justifications warrant abstention, the court concludes that Defendant's motion must be denied.

Based on the foregoing,

**IT IS THEREFORE ORDERED** that Defendant's Motion to Dismiss pursuant to Rule 12(b)(6) is hereby **DENIED**;

**IT IS FURTHER ORDERED** that Defendant's Motion to Dismiss or Stay pursuant to the abstention doctrine is hereby **DENIED**.

This ___ day of August, 2005.

GRAHAM C. MULLEN
CHIEF UNITED STATES DISTRICT JUDGE

13